UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| FAITH BLAKE, | ) | | |
| | ) | | |
| *Petitioner*, | ) | | |
| | ) | No.: | 1:18-CV-305 |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | Judge Collier | |
| | ) | | |
| *Respondent*. | ) | | |

# M E M O R A N D U M

Before the Court is Petitioner's motion to vacate her sentence under 28 U.S.C. § 2255.
(Doc. 2.) The United States (the "Government") has filed a response in opposition (Doc. 7), and
Petitioner has replied (Doc. 9). Petitioner has also filed supplemental briefing (Doc. 26), a motion
for an evidentiary hearing (Doc. 30), two motions for a subpoena (Docs. 23, 25), and a motion
requesting the status of the case (Doc. 39.)

## I.    BACKGROUND

### A.    Offense Conduct

Petitioner's criminal case arose from her operation of two pain-management clinics,
Superior One Medical Clinic ("Superior One") and Elite Care, in Chattanooga, Tennessee.

In December 2010, Petitioner and her mother, Barbara Lang, opened Superior One. (Doc.
158 in Case No. 1:12-cr-104.) They hired Charles Larmore as a nurse practitioner and later hired
Jerome Sherard as the medical director of the clinic. During the clinic's operation, controlled
substances were prescribed to nearly every patient, routinely being written outside the course of
professional conduct and without legitimate medical purposes. Many of the clinic's patients were
addicted to controlled substances, had histories of drug abuse, and displayed signs of drug abuse,

but they were still prescribed controlled substances. Patients were seen and prescribed medications without adequate medical documentation or justification, and medications sometimes were prescribed in dangerous combinations or given to patients whose medical histories should have raised alarms that the prescription would be dangerous. Patients also used and distributed drugs in the clinic's parking lot. (*Id.*)

The clinic failed to impose pill counts, which seek to verify that patients are taking their medications as prescribed, and prescribers failed to check databases to ensure patients were not "doctor shopping" for physicians who would prescribe controlled substances. In addition, patients had previously been discharged for violating the clinic's rules were allowed to return and obtain prescriptions for controlled substances. Petitioner and some of her employees had substance abuse issues, and many clinic employees were also patients. (*Id.*)

The clinic used promotional schemes to increase business, such as giving a free visit to patients who referred ten people to the clinic. Some patients were part of prescription-distribution rings in which a broker would pay for a prescription in exchange for receiving a portion of the pills prescribed, a scheme of which the clinic's operators knew. The clinic was operated on a cash-only basis, refusing to accept credit cards, debit cards, or checks. Employees were paid in cash, they did not receive any W-2 forms, and no taxes were withheld from their pay. Armed guards would patrol the parking lot, and some employees kept firearms inside the clinic. During its operation, the clinic had to move several times due to the clientele it attracted. It was estimated the clinic brought in two million dollars during its operation. Superior One ultimately closed in July 2011. (*Id.*)

In August 2011, after Superior One closed, Petitioner opened a new clinic called Elite Care. Petitioner continued to employ Sherard as the medical director and employed nurse practitioners

2

who saw patients and prescribed controlled substances to them. Elite Care operated in a similar manner to Superior One, and several former Superior One patients were seen at Elite Care. Elite Care business records show it generated approximately $700,000 in gross revenue during its operation. Elite Care closed in November 2011. (*Id.*)

Based on records obtained from the Tennessee Controlled Substances Monitoring Database, Larmore prescribed over twenty kilograms of oxycodone while working at Superior One, and Sherard prescribed over eight kilograms of oxycodone while employed at Superior One and Elite Care. Petitioner admitted a majority of these prescriptions were not for legitimate medical purposes. In addition, Petitioner failed to disclose any income from either clinic on her 2011 personal income tax return. She also failed to report approximately $1.5 million in income and failed to pay approximately $550,000 in taxes. (*Id.*)

Petitioner was released on bond pending trial. (Doc. 34 in Case No. 1:12-cr-104.) However, in May 2013, evidence was obtained that Petitioner had violated one or more of her conditions of release, and a revocation hearing was set for May 14, 2013. (Docs. 122, 158 in Case No. 1:12-cr-104.) Petitioner failed to appear for her revocation hearing, and when law enforcement agents went to her residence, they found she had abandoned it. (Doc. 158 in Case No. 1:12-cr-104.) In October 2013, Petitioner was apprehended in Maryland using an assumed name. (*Id.*)

### B. Guilty Plea

Eugene Shiles was appointed to represent Defendant upon her arraignment in October 2012. (Docs. 29–30 in Case No. 1:12-cr-104.) In December 2013, Petitioner pleaded guilty to two counts of conspiracy to distribute and dispense, and cause to be distributed and dispensed, Schedule II, III, and IV controlled substances, outside the scope of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and

(b)(1)(E), and one count of failure to appear, in violation of 18 U.S.C. § 3145(a)(1) and (b)(1)(A)(i).[1]  (Docs. 130, 158, 167 in Case No. 1:12-cr-104.)

On March 20, 2014, at Petitioner's request, the Court relieved Shiles as Petitioner's counsel and appointed Hannah Stokes.  (Doc. 208 in Case No. 1:12-cr-104.)

On August 1, 2014, through Stokes as her counsel, Petitioner filed a motion to withdraw her guilty plea on the grounds that Shiles had coerced her into pleading guilty.  (Doc. 276 in Case No. 1:12-cr-104.)  The Court conducted a hearing, at which the Government called Shiles to testify and introduced correspondence between Shiles and Petitioner as corroboration.  (*See* Doc. 358 at 3 in Case No. 1:12-cr-104.)  The Court ultimately denied Petitioner's motion to withdraw her guilty plea.  (Doc. 359 in Case No. 1:12-cr-104.)

On December 12, 2014, Petitioner moved for a psychiatric evaluation.  (Doc. 464 in Case No. 1:12-cr-104.)  Following the evaluation and a hearing, the Magistrate Judge determined Petitioner was competent to stand trial and had been competent when she entered her guilty plea. (Doc. 635 in Case No. 1:12-cr-104.)  The Court accepted and adopted the Magistrate Judge's Report and Recommendation, finding Petitioner competent to stand trial and finding her to have been competent when she entered her guilty plea.  (Doc. 642 in Case No. 1:12-cr-104.)

In the meantime, on December 30, 2014, and again at Petitioner's request, the Court relieved Stokes as counsel for Petitioner and appointed John Brooks as Petitioner's counsel.  (Doc. 498 in Case No. 1:12-cr-104.)

---

[1] Petitioner also agreed to plead guilty to one count of obstructing and impeding the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a).  (Docs. 130, 158, 167 in Case No. 1:12-cr-104.) The Government later moved to dismiss the count (Doc. 665 in Case No. 1:12-cr-104) in light of *United States v. Miner*, 774 F.3d 336 (6th Cir. 2014), and Petitioner's guilty plea to the count was withdrawn (Doc. 712 at 6 in Case No. 1:12-cr-104).

### C.      Sentencing Proceeding

Petitioner's sentencing hearing took place on October 1, 2015.  (Doc. 671 in Case No. 1:12-cr-104.)  Brooks raised multiple objections to the Presentence Report on Petitioner's behalf and moved for a downward departure.  (Doc. 712 [Hearing Tr.] in Case No. 1:12-cr-104.)

First, Petitioner objected to the two-level enhancement for obstruction of justice as it risked double counting based on Petitioner's guilty plea for failure to appear.  (*Id.* at 8.)  The Court denied this objection because the failure-to-appear offense had been grouped with the other offenses, thereby removing any double-counting concerns.  (*Id.* at 11 [21–25], 12 [1–2].)

Second, Petitioner objected to the two-level firearm enhancement because Petitioner did not have a firearm and the Government had to prove the armed security guards were co-conspirators for Petitioner to receive the enhancement.  (*Id.* at 12 [4–18].)  The Government called James Hixson to establish the security guards were co-conspirators.  (*Id.* at 19 [4–13], 20 [7–12].)  Based on the evidence, the Court determined the security guards were co-conspirators, Petitioner knew they possessed firearms, and they possessed firearms in connection with the drug-trafficking offense.  (*Id.* at 43 [4–10], 45 [16–20].)  Accordingly, the Court denied the objection to the two-level firearm enhancement.  (*Id.* at 45 [20–21].)

Third, Petitioner objected to the two-level enhancement for using and maintaining a facility for purposes of distributing and manufacturing controlled substances, because no controlled substances were manufactured or distributed at the clinic.  (*Id.* at 46 [5–20].)  The Court acknowledged this argument was novel, but the Court denied the objection because Petitioner's proposed interpretation would eliminate the ability of the Government to use the statute to prosecute illegal prescriptions.  (*Id.* at 55 [22–25], 56 [1–7].)

Fourth, Petitioner objected to the two-level livelihood enhancement, arguing there was no proof of a pattern of livelihood as Petitioner had only been involved in the conspiracy for nine months. (*Id.* at 56 [9–20].) The Court denied the objection because, as Petitioner conceded, the language of the enhancement applied, and Petitioner's argument more properly applied to her request for a variance. (*Id.* at 59 [16–22].)

Fifth, Petitioner objected to the four-level increase based on her role as an organizer. (*Id.* at 59 [24–25], 60 [1–5].) Her counsel argued the chief organizer was Lang, Petitioner's co-defendant and mother, so the organizer enhancement should not apply to Petitioner. (*Id.* at 60 [5–8].) The Court denied this objection based on the evidence in the record and Petitioner's hiring of Sherard, which demonstrated she was an organizer and leader of the criminal activity. (*Id.* at 64 [3–22].)

Finally, Petitioner objected to the failure to apply the safety valve, but acknowledged that, considering the Court's rulings, she could not satisfy the safety-valve requirements. (*Id.* at 65 [1–12].) The Court acknowledged the objection was made to preserve the record and denied the objection. (*Id.* at 65 [13–16].)

Petitioner then moved for a downward departure based on her emotional and mental-health problems and based on her drug addiction. (*Id.* at 66–67.) The Court, taking into account the sentences of her co-defendants and noting drug quantities are not the perfect proxy for culpability, granted her motion for a non-Guidelines sentence. (*Id.* at 97 [20–25], 98 [1–2].)

Petitioner was sentenced to seventeen years of imprisonment for each of the two conspiracy counts and ten years for failure to appear, all to run consecutively, for a total term of forty-four years of imprisonment. (Doc. 674 in Case No. 1:12-cr-104.)

6

### D. Appellate Proceedings

Petitioner, through Brooks as her counsel, appealed her sentence as procedurally and substantively unreasonable. (Doc. 717 in Case No. 1:12-cr-104.) The United States Court of Appeals for the Sixth Circuit disagreed and affirmed Petitioner's sentence. (*Id.*)

The Court of Appeals held it was not error to apply the two-level enhancement for maintenance of a facility for purpose of distributing controlled substances. (*Id.* at 5.) It explained that issuance of a prescription qualifies as distribution, Petitioner stipulated Superior One and Elite Care wrote medically unnecessary prescriptions for controlled substances, and Petitioner, as owner and operator, maintained the clinics. (*Id.* 4–5.)

The Court of Appeals further held the Court did not err in imposing the enhancement for obstruction of justice, because the Court had followed binding Sixth Circuit precedent. (*Id.* at 5.)

The Court of Appeals found no clear error in applying the firearm enhancement based on the evidence that co-conspirators carried firearms and Petitioner knew some clinic staff members carried firearms. (*Id.* at 6–7.)

The Court of Appeals next discussed the two-level leadership enhancement. (*Id.* at 7.) Petitioner argued this Court erred in not imposing the enhancement on her co-defendants, but the Court of Appeals noted that application of the enhancement does not turn on whether the sentences of all conspirators are similarly enhanced. (*Id.*) Because Petitioner owned and operated the clinics as her primary occupation and Sherard and Larmore were her employees, the enhancement was applied correctly. (*Id.*) The appellate court then denied Petitioner's argument that USSG §§ 3C1.1, 2D1.1(b)(1), and (b)(12) are unconstitutionally vague, because the Supreme Court has held the Guidelines are not subject to vagueness challenges. (*Id.* at 7–8.)

7

Finally, the Court of Appeals addressed Petitioner's substantive-reasonableness arguments. (*Id.* at 8–9.) Petitioner argued her sentence created an unwarranted sentencing disparity between her and similarly situated defendants. (*Id.* at 8.) However, the Court of Appeals noted there is a strong presumption of reasonableness afforded to in-Guidelines and below-Guidelines sentences, and the cases cited by Petitioner involved defendants with lower drug quantities. (*Id.*) As a result, Petitioner failed to overcome the presumption of reasonableness. (*Id.*) The Court of Appeals noted this Court acknowledged the advisory nature of the Guidelines, considered the 18 U.S.C. § 3553(a) factors, correctly calculated the Guidelines range, and sentenced Petitioner below that range. (*Id.*) Thus, the Court of Appeals held the Court did not abuse its discretion in imposing a sentence of five hundred twenty-eight months in prison. (*Id.* at 8–9.)

Petitioner then filed a petition for writ of certiorari to the Supreme Court of the United States, which was denied on October 11, 2017. (Doc. 720 in Case No. 1:12-cr-104.)

### E.      28 U.S.C. § 2255 Petition

On December 13, 2018, Petitioner filed a motion for her sentence to be vacated, her indictment dismissed, and her guilty plea set aside. (Doc. 2.) Petitioner advances four arguments for relief: (1) the involuntariness of her plea and inadequate assistance of counsel, (2) nationwide sentencing disparities, (3) lack of consideration given to the 18 U.S.C. § 3553 factors, and (4) prosecutorial and investigational misconduct in violation of Petitioner's constitutional rights. (*Id.*) Petitioner also asserts this Court is biased against her and requests a recusal. (*Id.*)

In response, the Government contends Petitioner has not established her counsel was constitutionally ineffective and that the Court has already rejected similar allegations from Petitioner. (Doc. 7 at 5.) The Government asserts Petitioner's claims of misconduct are not meritorious. (*Id.* at 6–7.) Finally, the Government contends Petitioner's claims regarding

sentencing disparities and consideration of § 3553 factors are not cognizable on collateral review and were expressly rejected by the Court of Appeals. (*Id.* at 4–5, 7–8 (combining grounds two and three).)

Petitioner has filed a reply brief (Doc. 9), a supplemental brief (Doc. 26), a motion for an evidentiary hearing (Doc. 30), motions for a subpoena (Docs. 23, 25), and a motion requesting the status of the case (Doc. 39). The matter is now ripe for review.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. To prevail on a § 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)). Thus, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This higher burden is in line with the historic meaning of habeas corpus, which is "to afford relief to those whom society has 'grievously wronged.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A district court must summarily dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 4(b).

If the motion is not summarily dismissed pursuant to Rule 4(b), Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the district court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. *See id.* 8(a). A petitioner's burden of establishing entitlement to an evidentiary hearing is relatively light. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a legitimate factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). On the other hand, an evidentiary hearing is not required if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted)). Nor does a petitioner's assertion of innocence, without more, entitle her to a hearing. *Id.*

## III.   DISCUSSION

The Court conducted an initial review of Petitioner's § 2255 motion and determined from its face that it should not be summarily dismissed. (Doc. 5.) Upon further review of the submissions of the parties, the record, and applicable law, the Court finds that a hearing is not necessary to resolve the motion and thus will **DENY** Petitioner's motion for a hearing (Doc. 30).

The Court will first consider Petitioner's request for recusal, and will then turn to her claims of an involuntary guilty plea, ineffective assistance of counsel, sentencing disparities, failure to consider the sentencing factors, and prosecutorial and investigative misconduct.

## A.     Request for Recusal

Petitioner contends the Court is biased against her and requests recusal based on a statement the Court made during her sentencing hearing.  (Doc. 2 at 88–89.)  Specifically, during her sentencing hearing, the Court stated:

> In looking at my involvement with you over the past two or three years or so, looking at your history of erratic behavior, looking at other things that you have done, the Court thinks it is quite plausible that you might decide to make money again, and even though the law is such that you cannot open up a practice yourself, you could entice some medical professional who is at a weak moment in their lives to open up a practice in their names, with you actually being the power behind the scenes and therefore controlling the operation. . . . So the Court believes that in your case a sentence not only has to achieve those first two purposes but also has to be one that will put you out of circulation so you will not have the opportunity to engage in this type of activity anymore.

(Doc. 712 at 96 [22–25], 97 [1–6, 15–19] in Case No. 1:12-cr-104.)  Petitioner contends this comment demonstrates clear bias against her and asserts recusal is required.  (*Id.* at 90.)

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Section 455(a) requires disqualification "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality."  *Johnson v. Mitchell*, 585 F.3d 923, 945 (6th Cir. 2009) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990)).

In addition to the grounds listed in § 455(a), disqualification is also required "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts."  28 U.S.C. § 455(b)(1).[2]  concerning the proceeding under the following circumstances:

---

[2] 28 U.S.C. § 455(b) lists other grounds, as well, none of which are implicated by Petitioner's motion.

A party may also seek recusal pursuant to 28 U.S.C. § 144:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"[T]he affidavit must allege facts showing 'a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 681 (6th Cir. 2001) (quoting *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983)). As a result, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Similarly, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

Here, Petitioner's request for recusal is based on the Court's statement during the sentencing hearing about a need to protect the public from Petitioner's future crimes. That statement, however, was based on the evidence presented during the hearing, namely that the significant amount of money Petitioner was able to obtain in a short period of time would create a strong incentive to commit the offense again. Petitioner has not offered any evidence to suggest the statement represents deep-seated antagonism, aside from repeatedly asserting the Court is biased against her. Petitioner has not provided any facts to support her claims of bias, and there is no evidence in the record to suggest bias. As a result, recusal is not required under either 28 U.S.C. § 455 or 28 U.S.C. § 144.

12

## B.     Involuntariness of Plea

Petitioner asserts she signed her plea agreement due to coercion, threats, and untruthfulness by Shiles, her first counsel.  (Doc. 2 at 15.)  Petitioner alleges Shiles told her if she went to trial and refused to negotiate for a plea agreement, she would receive an effective life sentence.  (*Id.* at 16.)  Petitioner also alleges Shiles called her names and said she was a "no good drug dealer" whenever Petitioner asserted the accusations against her were false.  (*Id.*)  Petitioner contends she never would have accepted the plea had it not been for her counsel's actions.  (*Id.*)  Petitioner also contends her extreme anemia prevented her guilty plea from being voluntarily and knowing.  (*Id.* at 23–24.)  In response, the Government first notes the Court rejected similar allegations of coercion when Petitioner sought to withdraw her guilty plea.  (Doc. 7.)  The Government next points to Petitioner's statements under oath during her plea colloquy in which she asserted she had not been coerced or forced to plead guilty.  (*Id.*)  She also swore that the plea agreement was accurate and she was pleading guilty because she was in fact guilty.  (*Id.*)  As a result, the Government asserts her claims of coercion are not credible and, thus, her challenge to her guilty plea should be dismissed.  (*Id.*)

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."  *Bousley v. United States*, 523 U.S. 614, 621 (1998).  Failure to challenge a plea on direct review results in the claim being procedurally defaulted on collateral review unless the defendant can show either cause and actual prejudice or that he or she is actually innocent.  *Id.* at 622.  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley*, 523 U.S. at 623 (internal quotations omitted).

13

Here, although Petitioner directly appealed her sentence to the Court of Appeals, she did not include a challenge to the validity of her guilty plea. (*See* Doc. 717 in Case No. 1:12-cr-104.) As a result, Petitioner's § 2255 challenge to the validity of her guilty plea is procedurally defaulted, and she cannot succeed on her claim unless she can show either cause and prejudice for failing to raise it earlier or actual innocence. Because Petitioner's argument focuses on her counsel's failure to raise the issue on appeal, it appears she is pursuing an argument based on cause and prejudice, rather than on an allegation of actual innocence.

To show cause, a petitioner ordinarily must demonstrate that an "objective factor external to the defense" prevented his or her counsel from complying with the procedural rule or that the procedural default was because of counsel's constitutionally ineffective performance. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). And, in addition to cause, a petitioner must show prejudice, which requires "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quoting *Frady*, 456 U.S. at 170).

Petitioner points to no objective factor that prevented her counsel from raising the issue of an involuntary plea on appeal. Instead, Petitioner alleges the issue was not raised because Brooks would not do what she asked and did not show her the appeal until after he appealed her case to the Supreme Court. (Doc. 2 at 5.) Thus, it appears Petitioner is arguing the procedural default was due to Brooks's constitutionally ineffective performance.

In determining whether an appellate attorney performed with reasonable competence, the Court of Appeals has provided a non-exhaustive list of factors to consider, including:

(1) Were the omitted issues "significant and obvious"?
(2) Was there arguably contrary authority on the omitted issues?
(3) Were the omitted issues clearly stronger than those presented?
(4) Were the omitted issues objected to at trial?

14

(5) Were the trial court's rulings subject to deference on appeal?
(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
(7) What was appellate counsel's level of experience and expertise?
(8) Did the petitioner and appellate counsel meet and go over possible issues?
(9) Is there evidence that counsel reviewed all the facts?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999).

Brooks failed to include a challenge to the validity of Petitioner's guilty plea in Petitioner's appeal. However, considering the above factors, Brooks still performed with reasonable competence. The Court had already denied Petitioner's motion to withdraw her guilty plea, which would have been reviewed by the appellate court under an abuse-of-discretion standard. *See United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). As a result, Petitioner has failed to allege facts sufficient to demonstrate cause and prejudice based on Brooks's actions. Accordingly, Petitioner's challenge to the validity of her guilty plea is procedurally defaulted.

Even assuming Petitioner's claim were not procedurally defaulted, it would still fail on the merits. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner swore under oath during her plea colloquy that she had not been forced or threatened into pleading guilty and that she was pleading guilty because she was in fact guilty. (Doc. 227 at 11 [6–8], 26 [15–17] in Case No. 1:12-cr-104.) In addition, after pleading guilty, Petitioner was interviewed by Probation Officers in preparation for her Presentence Report, and at no time did she indicate she was not guilty of the offenses to which she pleaded guilty. (Doc. 358 in Case No. 1:12-cr-104.) Further, Petitioner had a hearing before the Magistrate Judge

15

after requesting new counsel and again did not express any intention to withdraw her plea of guilty, despite having the opportunity to address the Court. (*Id.*) Petitioner has not offered any new evidence to overcome her solemn declaration of guilt in open court and the validity of her guilty plea. Petitioner's challenge to the validity of her guilty plea will be denied.

### C. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish an ineffective assistance of counsel claim,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. In doing so, a petitioner has the burden to support his or her contentions by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. There is a strong presumption that counsel's conduct was reasonable. *Id.* at 689; *see also Sims v. Livesay*, 970 F.2d 1575, 1579–80 (6th Cir. 1992) ("The court should begin with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (internal quotations and citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

16

Petitioner has asserted claims of ineffective assistance of counsel against Shiles, Stokes, and Brooks, each of whom represented her at some point during her criminal case. The Court will address each claim below.

### 1. Claims Against Shiles

Petitioner claims Shiles's conduct constitutes ineffective assistance of counsel because he coerced her into pleading guilty (Doc. 2 at 16), fired the investigator he had hired to question witnesses (*id.* at 44), lied in court about her meeting with the FBI and being shown all discovery (*id.* at 73, Doc. 9 at 9), was aggressive towards her (Doc. 9 at 9), and testified against her despite a conflict of interest (*id.* at 22).

#### a. Coercion

Petitioner claims Shiles coerced her into pleading guilty. (Doc. 2 at 16.) However, the Court has previously determined Petitioner's allegations regarding Shiles's alleged coercion were not credible. (Doc. 358 at 4–5 in Case No. 1:12-cr-104.) In addition, Petitioner stated under oath that she was pleading guilty because she was in fact guilty and that she had not been forced or threatened to plead guilty. (Doc. 227 at 11 [6–8], 26 [15–17] in Case No. 1:12-cr-104.) Petitioner has not provided any evidence to suggest Shiles coerced her into pleading guilty, nor evidence to overcome the strong presumption of verity afforded to solemn declarations in court. *See Blackledge*, 431 U.S. at 74. As a result, Petitioner's ineffective assistance claim based on Shiles's alleged coercion will be dismissed.

#### b. Fired Investigator

Petitioner asserts Shiles provided ineffective counsel because he fired the investigator hired to question witnesses. (Doc. 2 at 44.)

17

While a failure to hire an investigator can constitute ineffective assistance of counsel, a petitioner must demonstrate the hiring of an investigator would have resulted in exculpatory evidence, and, thus, the failure to do so prejudiced her defense. *See Alexander v. United States*, Case No. 2:16-cv-585, 2018 WL 1907426, at *8 (S.D. Ohio Apr. 23, 2018).

Here, Petitioner does not provide any evidence to suggest Shiles's firing of the investigator prejudiced her defense. She does not identify any witnesses who were not interviewed and whose testimony would have assisted in her defense. As a result, Petitioner has failed to demonstrate Shiles's firing of the investigator prejudiced her defense. Petitioner's ineffective assistance claim based on Shiles's firing of the investigator will therefore be dismissed.

### c. Lies in Court

Petitioner alleges Shiles lied in court when he asserted Petitioner had a meeting with the FBI. (Doc. 2 at 73.) However, Petitioner also states she did have a meeting with the FBI. (Doc. 2 at 74.) Thus, the record directly contradicts Petitioner's assertion that Shiles lied in court about her meeting with the FBI.

Petitioner also claims Shiles lied in court that he had shown her all discovery. (Doc. 9 at 9.) However, Petitioner does not state when Shiles allegedly told this lie in court or what discovery he did not show her. The Court sees no evidence in the record to suggest Shiles lied in court. Petitioner has failed to provide factual support for her claims that Shiles lied in court by a preponderance of the evidence. *See Pough*, 442 F.3d at 964 (explaining defendants "have the burden of sustaining their contentions by a preponderance of the evidence") (quoting *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). As a result, Petitioner's ineffective assistance of counsel claim based on Shiles's alleged lies in court will be dismissed.

18

### d. Aggressive Behavior

Petitioner claims Shiles was aggressive towards her on numerous occasions. (Doc. 9 at 9.) Specifically, Petitioner alleges Shiles threw papers at her when she said she wanted to go to trial and told Petitioner to shut up and stay mute. (*Id.*) However, Petitioner does not allege this behavior prejudiced her defense, and thus, she has failed to demonstrate such conduct, even if it occurred, constituted ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687.

Accordingly, Petitioner's claim based on Shiles's alleged aggressive behavior will be dismissed.

### e. Conflict of Interest

"To establish an ineffective assistance of counsel claim based on a conflict of interest, a movant must demonstrate (1) the existence of an actual conflict of interest and (2) that the conflict adversely affected the movant's defense." *United States v. Atkin*, 80 F. Supp. 2d 779, 783 (N.D. Ohio 2000) (citing *Strickland*, 466 U.S. at 692).

Petitioner's conflict-of-interest claim is based on Shiles's testimony in the hearing on her motion to withdraw her guilty plea. At the time of the hearing, Shiles no longer represented Petitioner. (*See* Doc. 331 (identifying Stokes as Petitioner's counsel) in Case No. 1:12-cr-104.) Because Shiles no longer represented Petitioner when he gave his testimony, Petitioner has not stated a cognizable conflict-of-interest claim as to Shiles's testimony. Accordingly, Petitioner's ineffective assistance claim based on Shiles's purported conflict of interest will be dismissed.

### 2. Claims Against Stokes

Petitioner contends her second appointed counsel, Stokes, was also ineffective. Petitioner claims Stokes failed to file a prompt request to withdraw Petitioner's guilty plea. (Doc. 2 at 30.) Petitioner also contends Stokes was ineffective by failing to call any witnesses at the hearing on

the motion to withdraw Petitioner's guilty plea.  (*Id.*)  Finally, in Petitioner's reply brief, she asserts Stokes was ineffective for failure to investigate.  (Doc. 9 at 11.)

### a.        Failure to Promptly File Request to Withdraw Plea

Petitioner claims Stokes's performance was deficient because Stokes failed to promptly file a request to withdraw Petitioner's plea agreement, which she contends was the Court's primary justification to deny her request.  (Doc. 2 at 30.)  In the motion to withdraw, Stokes acknowledged Petitioner raised the issue of withdrawing her guilty plea in their first conversation.  (Doc. 276 at 3 in Case No. 1:12-cr-104.)  However, the Court's denial of Petitioner's motion to withdraw her guilty plea was not based solely on Stokes's delay in filing the request.

As discussed in the Court's Order denying Petitioner's motion to withdraw her guilty plea, the Court first determined Petitioner's claims of coercion were not credible based on her motive and inconsistent statements.  (Doc. 358 at 4–5 in Case No. 1:12-cr-104.)  The Court reached that determination because Petitioner had a motive to be untruthful and her testimony was contrary to other statements she had given in court, including her testimony under oath to the magistrate judge during her change of plea hearing.  (*Id.*)  The Court then applied the seven factors outlined in *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994):

> (1) the amount of time that elapsed between the plea and the motion to withdraw it, (2) the existence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings, (3) whether the defendant has asserted or maintained [her] innocence, (4) the circumstances underlying the entry of the guilty plea, (5) the defendant's nature and background, (6) the defendant's prior experience in the criminal justice system, and (7) potential prejudice to the United States if the defendant's motion were granted.

(Doc. 358 at 5–9 in Case No. 1:12-cr-104 (quoting *Bashara*, 27 F.3d at 1181).)

Considering the delay in filing the motion, the Court noted Petitioner did not express any intent to withdraw her guilty plea to the Magistrate Judge during the March 20, 2013, hearing on

her motion to substitute counsel, nor did she share this intent with the Probation Office. (*Id.* at 5.) In addition, the Court did not find Petitioner's assertions that she raised the issue to Shiles to be credible, which, thus, did not justify the delay. (*Id.*) The Court also found her assertion that Stokes needed time to evaluate the extensive record did not justify the delay. (*Id.* at 7.) The Court determined Petitioner did not maintain her innocence, another factor weighing against Petitioner's motion. (*Id.*) The circumstances underlying her guilty plea did not support her motion, as Petitioner had an entire month to reconsider her plea agreement before changing her plea in court, and she stated under oath that she had not been coerced or threatened into making the plea. (*Id.* at 7–8.) The Court also determined there was no evidence Petitioner did not understand the plea colloquy. (*Id.* at 8.) Finally, the Court noted Petitioner had minimal experience with the federal criminal justice system, which was the only factor weighing in favor of granting Petitioner's motion. (*Id.* at 8–9.)

Based on all these factors, the Court denied Petitioner's motion. (*Id.* at 9.) Thus, Stokes's delay in filing the motion was just one factor of many in reaching the decision, and Petitioner offers no evidence to suggest a more timely motion by Stokes would instead have been granted. As a result, she has failed to demonstrate Stokes's delay prejudiced her defense. *See Strickland*, 466 U.S. at 687. Petitioner's ineffective-assistance claim based on Stokes's failure to timely file the motion to withdraw her guilty plea will be dismissed.

### b. Failure to Call Witnesses

"The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010) (citing *Towns v. Smith*, 395 F.3d 251, 258–60 (6th Cir. 2005)). To show prejudice, a defendant must demonstrate "a reasonable probability that the outcome of the proceedings would have been

different had his counsel introduced the [witness's] testimony." *Fitchett v. Perry*, 644 F. App'x 485, 493 (6th Cir. 2016) (internal quotations omitted).

Here, Petitioner asserts Stokes called no witnesses at the hearing on the motion to withdraw her guilty plea, and, as a result, she was unable to set aside her plea. (Doc. 9 at 11.) However, Petitioner does not provide the names of any witnesses whose testimony would have resulted in a different outcome of the proceedings.

As summarized in the preceding section, the Court's denial of Petitioner's motion was based on the Court's determination of Petitioner's credibility, her prior statements in court, her failure to timely file the motion, the circumstances underlying her guilty plea, and her background. (*See* Doc. 358 in Case No. 1:12-cr-104.) Petitioner does not contend any witnesses would have altered the Court's analysis, and thus has failed to demonstrate Stokes's failure to call witnesses at this hearing prejudiced her defense. *See Fitchett*, 644 F. App'x at 493. Accordingly, Petitioner's claim based on Stokes's failure to call witnesses will be dismissed.

### c. Failure to Investigate

Petitioner contends Stokes did not investigate anything and was unprepared to handle this case. (Doc. 9 at 11.) A failure to investigate can constitute ineffective assistance of counsel when there is a complete failure to investigate a witness and a showing that the uninvestigated witness had favorable testimony to offer. *See Stewart v. Wolfenbarger,* 468 F.3d 338, 356–57 (6th Cir. 2006); *see also Towns v. Smith,* 395 F.3d 251, 258–59 (6th Cir. 2005) (explaining ineffective assistance claims have been found when counsel fails to investigate and the failure to do so is prejudicial to the client); *Clinkscale v. Carter,* 375 F.3d 430, 443 (6th Cir. 2004) (explaining a failure to investigate potential alibi witnesses can constitute ineffective assistance of counsel).

22

Here, Petitioner asserts Stokes failed to investigate anything, but she offers no facts for the Court to evaluate what Stokes failed to investigate or how Petitioner's defense was prejudiced. As a result, Petitioner has not met her burden of sustaining her contention by a preponderance of the evidence. *See Pough*, 442 F.3d at 964. Accordingly, her ineffective-assistance-of-counsel claim based on Stokes's failure to investigate will be dismissed.

### 3. Claims Against Brooks

Petitioner asserts her third appointed counsel, Brooks, was ineffective because he made inappropriate comments towards her (Doc. 9 at 12), did not understand her Guidelines (*id.* at 13), failed to file a motion for another physician to evaluate her (*id.*), and did not allow Petitioner to read her appeal before filing it (*id.*).

#### a. Inappropriate Comments

Petitioner contends Brooks made inappropriate comments towards her, such as stating his hands were bigger than hers, wanting to compare their hand sizes, saying Petitioner looked like his ex-wife, and commenting on Petitioner's looks. (Doc. 9 at 12.) Such comments would indeed have been inappropriate. However, Petitioner fails to allege how any such comments prejudiced her defense. As a result, Petitioner fails to state a claim of ineffective assistance of counsel based on Brooks's alleged inappropriate comments, and her claim will be dismissed. *See Strickland*, 466 U.S. at 687.

#### b. Failure to Understand Guidelines

Petitioner asserts Brooks stated he did not understand her Guidelines range and, thus, his performance was deficient. (Doc. 9 at 13.) However, there is no evidence in the record that Brooks made this statement, nor evidence that he misunderstood her Guidelines range. To the contrary, Brooks made several objections to the enhancements to Petitioner's offense level and

demonstrated a clear understanding of the applicable Guidelines range. (Doc. 712 at 8 (objecting to two-level enhancement for obstruction of justice), 12 (objection to two-level firearm enhancement), 46 (objection to two-level enhancement for using and maintaining facility for purposes of distributing and manufacturing controlled substances), 56 (objection to two-level livelihood enhancement), 59 (objection to four-level organizer enhancement), 65 (objection for failure to apply safety valve) in Case No. 1:12-cr-104.) Thus, the record demonstrates Brooks understood Petitioner's Guidelines range.

Accordingly, Petitioner's claim based on her assertion Brooks misunderstood the Guidelines will be dismissed.

### c.     Failure to File Motion

Petitioner contends Brooks failed to move for a different mental competency evaluation after Petitioner had shown the doctor who conducted the first evaluation did not understand the Court's Order and did not meet with Petitioner for more than a few minutes. (Doc. 9 at 13.) However, Petitioner does not explain what aspect of the Court's Order Dr. Rodolfo Buigas did not understand, and Brooks questioned Dr. Buigas on his limited interactions with Petitioner. (Doc. 643 at 34 in Case No. 1:12-cr-104.) Petitioner has not provided any other reasons why another evaluator was necessary and has not questioned either Dr. Buigas's qualifications or the veracity of his conclusions.

As a result, Petitioner's claim for ineffective assistance based on Brooks's failure to seek another doctor will be dismissed.

### d.     Appellate Brief

Petitioner asserts Brooks did not allow her to read her direct appeal before filing it, which she alleges was ineffective assistance of counsel. (Doc. 9 at 13.) However, Petitioner does not

24

explain how this prejudiced her defense.  Asserting legal conclusions without providing factual support is insufficient to establish a claim of ineffective counsel under *Strickland*.  Accordingly, Petitioner's ineffective assistance claim based on this conduct will be dismissed.

### D.    Sentencing Disparity

Petitioner contends her sentence was longer than the sentences of other similarly situated defendants and, thus, her sentence resulted in an unwarranted sentencing disparity.  (Doc. 2 at 82.) Petitioner notes she raised this issue on appeal and contends the Court of Appeals wanted evidence of nationwide sentencing disparities rather than just disparities between Petitioner and her co-defendants.  (*Id.*)  Petitioner then cites several cases, purportedly to demonstrate nationwide sentencing disparities.  (*Id.*)  Petitioner also contends she should have been given a downward variance for being the first to leave the criminal activity and that the two-level livelihood enhancement should be removed.  (*Id.* at 88.)  In response, the Government first argues Petitioner's claim is not cognizable on collateral review because it does not implicate a constitutional error in her sentencing.  (Doc. 7.)  The Government then asserts the claim should be denied because it has already been addressed and rejected by the Court of Appeals.  (*Id.*)

A claim previously litigated on direct appeal cannot be the basis for collateral relief absent exceptional circumstances.  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is . . . well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.").

Here, Petitioner raised these arguments on appeal, and the Court of Appeals rejected them. (*See* Doc. 717 in Case No. 1:12-cr-104.)  The Court of Appeals noted there is a strong presumption of reasonableness accorded to below-Guidelines sentences and explained the cases cited by

Petitioner regarding sentencing disparities involved lower drug quantities than those for which Petitioner was held accountable. (*Id.* at 8.) The Court of Appeals also expressly affirmed the livelihood enhancement because Petitioner owned and operated the clinics as her primary occupation. (*Id.* at 7.) Finally, the Court of Appeals affirmed the substantive reasonableness of the sentence. (*Id.* at 8–9.)

Based on the decision of the Court of Appeals, the Court cannot consider Petitioner's arguments on collateral review unless there are exceptional circumstances for doing so. Petitioner has not offered any exceptional circumstances for considering the arguments she previously raised on appeal. Instead, she cites cases she contends demonstrate nationwide sentencing disparities, but does not explain why she did not raise those cases to the Court of Appeals or how such cases constitute exceptional circumstances to reconsider her sentencing-disparities claim. Accordingly, the Court cannot consider Petitioner's sentencing-disparities claim, and it will be dismissed.

### E.     Section 3553(a) Factors

Petitioner contends the Court, in its § 3553(a) analysis, failed to properly consider her motion for a downward departure, improperly took into account potential future criminal activity, and was biased against Petitioner. (Doc. 2 at 88–89.) Petitioner further asserts the Court should have placed greater weight on her lack of a criminal history, status as a mother, actions in the criminal case, limited education, and drug abuse problems. (*Id.* at 93–94.) Petitioner contends the Court should have granted her motion for downward variance and departure. (*Id.*)

The Government addressed this argument in combination with its discussion of Petitioner's sentencing disparity claim. (Doc. 7 at 4.) The Government argued Petitioner failed to state a constitutional violation that is cognizable on collateral review and thus the claim should be dismissed. (*Id.*)

Regarding bias, the Court has already addressed and dismissed Petitioner's request for its recusal. (*See supra* § III(A).) The remaining arguments Petitioner raises, failure to consider her motion for downward departure and failure to properly weigh the § 3553 factors, are contradicted by the record and have already been raised on appeal.

The Court granted Petitioner's motion for a non-Guidelines sentence. (Doc. 712 at 97–98 [Hearing Tr.] in Case No. 1:12-cr-104.) On appeal, the Court of Appeals evaluated the substantive reasonableness of Petitioner's sentence and found that the Court considered the § 3553(a) factors. (*See* Doc. 717 at 8–9 in Case No. 1:12-cr-104.) As discussed above, a claim previously litigated on direct appeal cannot be the basis for collateral relief absent exceptional circumstances. *See Jones*, 178 F.3d at 796. Petitioner has not provided any exceptional circumstances for the Court to consider the claims she already raised on direct appeal. Accordingly, Petitioner's claims regarding the § 3553(a) factors will be dismissed.

### F. Prosecutorial and Investigative Misconduct

Petitioner alleges Gregg Sullivan, one of the prosecutors, and Drug Enforcement Agent James Hixson engaged in misconduct. Specifically, Petitioner alleges Hixson improperly pressured and threatened her (Doc. 2 at 53, 55), Sullivan gained an indictment based only on hearsay statements (*id.* at 56–57), Sullivan made false or misleading statements to the Court (*id.* at 57, 61, 77), Sullivan made materially untrue statements in the indictment (*id.* at 61–62), files were removed from the clinic without a warrant (*id.* at 70), and Sullivan withheld the filing of a USSG § 5K1.1 motion on Petitioner's behalf (*id.* at 79).

In response, the Government contends it is well settled that grand jurors can consider hearsay evidence, and Petitioner has provided no evidence to indicate the information provided by the Government was false. (Doc. 7 at 6–7.) The Government also notes it is within the

27

prosecutor's discretion as to whether to file a USSG § 5K1.1 motion, and Petitioner has not proven she provided substantial assistance to the Government nor that the Government's refusal to file the motion was for an impermissible reason.  (*Id.*)  Finally, the Government asserts Petitioner has failed to explain how law enforcement violated her Fourth Amendment rights and, thus, has failed to state a claim for relief.  (*Id.* at 7.)

To state a claim for prosecutorial misconduct, a petitioner must show the Government's conduct was "so egregious so as to render the entire trial fundamentally unfair." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotation omitted).  The Court addresses each allegation below.

### 1.    Agent Hixson

Petitioner asserts Agent Hixson improperly pressured and threatened her during his investigation.  (Doc. 2 at 53, 55.)  However, Petitioner does not explain what actions she took as a result of his conduct nor how his conduct rendered her later prosecution fundamentally unfair.  Petitioner swore under oath that she was pleading guilty to the crimes in her indictment because she was in fact guilty, and that she had not been coerced or threatened into pleading guilty.  (Doc. 227 at 11 [6–8], 26 [15–17] in Case No. 1:12-cr-104.)  Petitioner has not offered any evidence to undermine her prior sworn declarations in court.  *See Blackledge*, 431 U.S. at 74.  Accordingly, Petitioner has not stated a cognizable prosecutorial misconduct claim based on Agent Hixson's alleged conduct, and her claim will be dismissed.

### 2.    Grand Jury Hearsay

Petitioner claims Sullivan acted improperly because her indictment was based solely on hearsay evidence.  (Doc. 2 at 56–57.)  "It has long been established . . . that a defendant may be indicted by a grand jury relying solely on hearsay evidence." *United States v. Mack*, 837 F.2d 254,

28

259 (6th Cir. 1988). Petitioner's misconduct claim based on hearsay presented to the grand jury will therefore be dismissed.

### 3. Untruthful Statements

Next, Petitioner contends Sullivan made untruthful statements to the Court and in the Indictment. (Doc. 2 at 57, 61, 77.) Petitioner asserts the prosecutor only had hearsay evidence of her alleged wrongdoing, but still indicted her and omitted such information during the sentencing hearing. (*Id.* at 77.) However, as discussed above, the Government is permitted to offer hearsay evidence to the grand jury, and the grand jury indicted Petitioner based on that evidence.

In addition, Petitioner pleaded guilty to the crimes outlined in the indictment, and she did not contend any of the conduct alleged in the indictment is false. (Doc. 227 at 11 [6–8], 26 [15–17] in Case No. 1:12-cr-104.) Petitioner also fails to cite specific statements by the Government to the Court that she contends are false, and thus has failed to provide factual support for her claim. As a result, Petitioner has failed to demonstrate the Government engaged in prosecutorial misconduct and her claim based on Sullivan's allegedly untruthful statements will be dismissed.

### 4. Fourth Amendment

Petitioner then asserts her Fourth Amendment rights were violated. (Doc. 2 at 70.) However, as the Government noted, Petitioner does not explain how her rights were violated, beyond asserting medical records were removed from the clinic without a warrant. Petitioner must provide "something more than legal conclusions unsupported by factual allegations" to entitle her to relief. *Aguirre v. United States*, Nos. 2:06-cr-76, 2:10-cv-276, 2012 WL 3191958, at *6 (E.D. Tenn. Aug. 2, 2012) (citing *Blackledge*, 431 U.S. at 74). Because Petitioner has failed to provide any factual allegations in support, her prosecutorial misconduct claim based on the Fourth Amendment will be dismissed.

29

### 5.  USSG § 5K1.1 Motion

Finally, Petitioner asserts the Government should have filed a USSG § 5K1.1 motion on her behalf.  (Doc. 2 at 79.)  However, a refusal to file a § 5K1.1 motion is only prohibited if based on improper factors, such as consideration of a defendant's race or religion.  *See Wade v. United States*, 504 U.S. 181, 185–86 (1992).  Petitioner has not demonstrated the refusal to file was based on improper factors, as she only asserts that she provided substantial assistance to the Government and thus was entitled to a § 5K1.1 motion.  Because Petitioner does not allege an improper motivation for the Government's failure to pursue a § 5K1.1 motion, Petitioner has failed to state a claim for prosecutorial misconduct.  Accordingly, Petitioner's misconduct claim based on the lack of a § 5K1.1 motion will be dismissed.

### G.  Motions for Subpoenas

Petitioner has filed two motions for the issuance of a document subpoena under Rule 17(c) of the Federal Rules of Criminal Procedure.  (Docs. 23, 25.)

Rule 17 provides in pertinent part as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).  When records are subpoenaed for production at a trial or hearing, their relevance and admissibility are determined when they are produced, and they are then either entered into evidence or left in the custody of the producing party.  *United States v. Al-Amin*, No. 1:12-CR-50, 2013 WL 3865079, at *3 (E.D. Tenn. July 25, 2013).

Rule 17(c) also allows the production of records before a trial or hearing.  Fed. R. Crim. P. 17(c)(1).  To compel production of records from a third party, a party must show:

30

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Al-Amin*, No. 1:12-CR-50, 2013 WL 3865079. at *5 (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)). Thus, just as with records returned in open court, records produced before a hearing must be intended for introduction into evidence and capable of being introduced into evidence. *Id.* at *4. "The records must meet the standards of admissibility that apply at a trial or hearing." *Id.*

In addition, records subpoenaed under Rule 17(c) must be returned to the Court, not a party. *See id.* at *4. "Since the documents, records, and other objects are not discovery, but rather are intended to be admitted into evidence, it is the Court to which the document, records, and other objects must be returned." *Id.*

Among other procedural flaws in Petitioner's motions for subpoenas, she has not shown the records she seeks would be admissible into evidence. Petitioner seeks "[e]very phone call made by petitioner while housed" at CCA Silverdale. (Doc. 23.) Elsewhere she says she is seeking "the printed phone records from CCA Silverdale." (Doc. 25.) It is thus unclear whether she is seeking audio recordings of conversations or written records of incoming or outgoing phone calls. In either case, Petitioner has not shown the records she seeks would be admissible. A statement, whether written or oral, that was made outside of a trial or hearing and is offered into evidence for the truth of the matters asserted in the statement constitutes hearsay. Fed. R. Evid. 801(c). Hearsay is generally not admissible into evidence. Fed. R. Evid. 802. While there are exceptions to and exclusions from the hearsay rule, *see* Fed. R. Evid. 801(d), 803, 804, Petitioner has not made any showing that the particular records she seeks would be admissible, even if her motions for a

31

subpoena where otherwise proper under Rule 17(c) of the Federal Rules of Criminal Procedure. Therefore, the Court will **DENY** Petitioner's motions for a subpoena (Docs. 23, 25).

## IV. CONCLUSION

Based on the foregoing, Petitioner's motion for an evidentiary hearing (Doc. 30), her motions for a subpoena (Docs. 23, 25), and her § 2255 motion as supplemented (Docs. 2, 26) will be **DENIED**. Her motion requesting the status of the case (Doc. 39) will be **DENIED AS MOOT**.

**An appropriate order will enter.**

<u>/s/</u>_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

32